Glen L. **RUTHERFORD, Individually and on behalf of a class composed of terminally ill cancer patients, Plaintiffs, Appellees,**

v.

**UNITED STATES of America, Joseph A. Califano, Secretary of Health, Education and Welfare, Donald Kennedy, Commissioner of the Food and Drug Administration, et al., Defendants, Appellants.**

No. 77–2049.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 26, 1978.

Decided July 10, 1978.

Rehearing Denied Aug. 8, 1978.

Barry Grossman, Atty., Dept. of Justice, Washington, D. C. (John H. Shenefield, Asst. Atty. Gen., Catherine G. O'Sullivan, Atty., Dept. of Justice, Peter L. De La Cruz, Atty., Dept. of Justice, Washington, D. C., of counsel, Richard M. Cooper, Chief Counsel, Eugene M. Pfeifer, Associate Chief Counsel for Enforcement, Rockville, Md., and Arnold I. Friede, Asst. Chief Counsel for Enforcement, Food and Drug Div., Dept. of Health, Education and Welfare, Washington, D. C., with him on the brief), for appellants.

Kenneth R. Coe, of Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., for appellees.

Charles F. Wheatley, Jr., William T. Miller, Grace Powers Monaco, Robert A. O'Neil, of Wheatley & Miller, Washington, D. C., on the brief for amicus American Cancer Society.

Before SETH, Chief Judge, and BARRETT and McKAY, Circuit Judges.

SETH, Chief Judge.

The Government appellants seek review of a district court holding which set aside a determination of the Commission of Food and Drugs that Laetrile, a controversial cancer drug, is a "new drug" within the meaning of the Federal Food, Drug, and Cosmetic Act ("the Act"), 21 U.S.C. § 301 *et seq.*, and thus excludable from interstate commerce due to the absence of an approved new drug application.

The central question here is whether the plaintiffs, *a class of terminally ill cancer patients*, should be allowed to acquire Lae-

trile for their own use intravenously despite the Act's requirements that "safety" and "effectiveness" be established for the approval of a "new drug." We conclude as a matter of law that the "safety" and "effectiveness" terms used in the statute have no reasonable application to terminally ill cancer patients, and have no established meaning when considered in that context.

This case is before us for the second time. For a summary of the facts, *see Rutherford v. United States*, 542 F.2d 1137 (10th Cir.), and *Rutherford v. United States*, 438 F.Supp. 1287 (D.C.). In *Rutherford v. United States*, 542 F.2d 1137 (10th Cir.), we held that an adequate administrative record had not been developed by the Commissioner to justify classifying Laetrile as a new drug. We remanded and said:

"   .   .   To support its determination the FDA in the case at bar would have to present substantial evidence to support the proposition that Laetrile is not generally recognized among qualified experts as 'safe and effective,' and that Laetrile is not grandfathered by either of the exemptions discussed above."

We also upheld a preliminary injunction granted by the district court with prevented the FDA from interfering with a cancer patient's personal use of the drug.

On remand, the Commissioner compiled some 5,500 pages of written submissions and held two days of oral hearings before making a determination. This was apparently a rule-making proceeding under section 701 of the Act, 21 U.S.C. § 371. The unsworn material compiled by the agency represents diverse views but does not appear to be the typical record which should be formulated to support an agency determination which is dealing with issues of scientific and medical expertise or in response to our remand. However, we fully realize difficulties in making a record when the proponents of a drug are a group of individuals and not the typical drug manufacturer who conducted extensive laboratory tests and assembled a mass of scientific data. The FDA was considering what may be regarded as a folk medicine with no established or organized proponents. This was difficult to do within the structure of the agency.

After consideration of the record on remand, the Commissioner announced that: (1) Laetrile is not generally recognized by qualified experts as a safe and effective cancer drug; and (2) Laetrile is not exempt from the premarket approval requirement for new drugs by virtue of the "grandfather" provisions of the Act. Distribution of Laetrile in interstate commerce, the Commissioner concluded, is thus illegal and subject to regulatory activity by the Food and Drug Administration.

The district court reviewed the administrative record and concluded that the decision of the Commissioner was "arbitrary and capricious" with regard to the 1962 grandfather exemption. The district court also held that the provisions of the Act violated a cancer patient's constitutional right to privacy by denying him the right to use a nontoxic substance in connection with his own personal health care. A permanent injunction was issued by the district court.

■■■■ While the FDA should make the initial determination as to "new drug" status, this decision is reviewable under 5 U.S.C. § 706(2). *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207. In reviewing the FDA's determination the court should decide *inter alia*, "all relevant questions of law." 5 U.S.C. § 706. In *Rutherford* we remanded to the FDA for a determination on "safety" and "effectiveness," prerequisites which must be established for new drug approval. However, as these criteria are applied to terminally ill cancer patients, we noted some doubt in the application of the terms:

"The FDA argues that a drug offered for use in a life-threatening disease that is not 'effective' is thereby not 'safe' either. Thus even under the pre-1962 law Laetrile would have to satisfy effectiveness criteria. This argument may lose its force in the case of a terminally-ill patient or in the case of a patient suffering from a disease for which there are in fact no 'effective' remedies."

542 F.2d 1137, 1142, n. 5.

■ We are considering only cancer patients who are terminally ill and only their intravenous use of Laetrile. Thus in this context, what can "generally recognized" as "safe" and "effective" mean as to such persons who are so fatally stricken with a disease for which there is no known cure? What meaning can "effective" have in the absence of anything which may be used as a standard? Under this record Laetrile is as effective as anything else. What can "effective" mean if the person, by all prevailing standards, and under the position the Commission takes, is going to die of cancer regardless of what may be done. Thus there has been no standard here advanced by the Commission against which to measure the safeness or effectiveness of the drug as to the plaintiffs. Clearly the terms have no meaning under these circumstances, and certainly not the abstract meaning sought to be applied by the Commission. This was an erroneous application of the Act by the Commission. We do not say that *anything* is safe for the persons here concerned and *nothing* is effective, but it is apparent that no applicable or reasonable measure exists.

It would not seem difficult to define the group to which this determination of a legal issue applies. A licensed medical practitioner can express an opinion as to whether, under the present state of the art, a particular person is terminally ill with cancer, and to so certify.

■ We are well aware of and have considered the arguments that some patients will be victimized by unscrupulous persons who will seek to profit by offering Laetrile as a "cure." This is however not a legal matter, but an administrative or regulatory problem for the FDA.

■ Therefore, we hold as a matter of law that the "safety" and "effectiveness" requirements of the statute as now written have no application to terminally ill cancer patients who desire to take the drug intravenously.

■ We do not reach the constitutional aspects which were applied by the district court. We conclude, however, that the permanent injunction granted by the district court should be continued but be limited only to permit procurement of intravenous injections administered by a licensed medical practitioner to persons who are certified by a licensed medical practitioner to be terminally ill of cancer in some form.

We are confident that the FDA with all due dispatch will promulgate regulations within the above limitations and as if the drug was found by the Commission to be "safe" and "effective" for the limited group of persons here considered.

The case is remanded for further proceedings consistent with this opinion.